IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**STEVEN BERNDT**
individually and on behalf
of all others similarly situated,

Case No. 11-cv-791

Plaintiff,

vs.

**CLEARY BUILDING CORP.**

Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT FACILITATED NOTICE**

The Named Plaintiff and opt-in Plaintiffs, on their own behalf and on behalf of similarly situated Cleary Building Corp. ("Cleary") field crew employees and foremen, seek conditional class certification of these classes pursuant to 29 U.S.C. § 216(b). Because the Plaintiff at this early stage brings forth more than sufficient evidence that the Named Plaintiff and the putative class members in both the field crew and foremen classes are similarly situated, he respectfully requests that this motion be granted and that Court-approved notice be sent to the putative class members.

<u>**INTRODUCTION**</u>

Defendant, Cleary Building Corporation is headquartered in Verona, Wisconsin. Cleary sells and builds buildings and building components. (Dkt. 32,

1

Deposition Transcript of Fed. R. Civ. P. 30(b)(6) Designee Daniel J. Bullock, Cleary Chief Financial Officer ("Bullock Depo.") at 54:10-12). To that end, Cleary employs building trade employees, known as field crew, to perform construction work throughout the United States. The field crew typically includes one foreman, who is responsible for overseeing crew members, tracking field crew hours worked and ensuring safety on the jobsite.

Both foremen and crew members[1] are required to report to branch offices each morning, attend mandatory meetings, re-stock trucks with supplies, hitch trailers and perform other work for which they are not compensated. Cleary admits that its foremen are required to report to the branch office in order to attend meetings and perform work before travelling to the jobsite. Cleary, however, denies that crew members attend these meetings or perform such work prior to arriving at the jobsite.

After attending the morning meeting, and upon completion of this work at the branch office, Cleary field crew employees and foremen travel to jobsites in Cleary vehicles. Nevertheless, Cleary maintains a common policy and practice for both foremen and crew members, whereby it does not pay them for morning meetings or for subsequent travel time, with the exception of the driver.[2] Cleary implements this policy and practice by instructing foremen not to record employee start times until employees arrive at their jobsites. Similarly, Cleary instructs

---

[1] Although foremen are crew members, for clarity purposes, in this brief, the term "field crew members" will refer to members of the field crew who are not foremen. The term "foremen" will refer only to foremen.

[2] The foremen typically drive to the jobsite, but this is not always the case.

foremen to record field crew stop times as the time they leave a jobsite, regardless of the fact that field crew employees travel back to branch offices and perform work before going home from the branch office in their own vehicles.

Cleary's policy of failing to pay employees for morning meetings, work performed and travel time that is part of the day's work violates the Fair Labor Standards Act (FLSA) as well as Wisconsin law. Because each of the similarly situated Cleary field crew members and foremen were subject to this common and uniform policy, the Named Plaintiff and opt-in Plaintiffs respectfully request that the Collective Class be conditionally certified and that Court-approved notice be sent to the eligible class members.

<u>RELEVANT FACTS</u>

## I.   CLEARY BUILDING CORPORATION

Cleary operates 79 branch offices in 24 states, including Wisconsin, Minnesota, Illinois, Iowa, Oregon, Colorado, Montana, Nevada, Kansas, Utah, Idaho, Texas, New Mexico, North Dakota, South Dakota, Oklahoma, Nebraska, Missouri, Wyoming, Kentucky, Pennsylvania, Indiana, Michigan and Ohio. (Bullock Depo. at 65:9-13; Parsons' Declaration Attached as Ex. 9). Cleary branch offices are divided into 9 regions, each of which is supervised by a Regional Manager. (Bullock Depo. at 64:10-12; 70:4). Regional managers report to the assistant general manager of operations for their division or directly to the general manager. (Bullock Depo. at 70:19-22; 70:25-21:1-2). General managers then report directly to Vice President of Operations, Todd Montgomery. (Bullock Depo. at 71:3-5). Regional

3

Managers are responsible for managing branch offices in the region, managing the branch managers of each branch office in the region, overseeing the management of branch field employees, overseeing the management of branch sales team employees, hiring and firing branch managers in the region, ensuring branch employees are paid pursuant to Cleary's policies, and ensuring region branch managers operate region branches pursuant to Cleary policies. (Dkt. 42, Declaration of David Steele, Cleary Regional Manager, Region 8, at ¶4 (Steele Dec.))

Within each region, every Cleary branch office employs a branch manager, sales employees and a crew of building trade employees referred to as the "field crew." (Bullock Depo. at 68:1-25). Branch Managers work primarily in their assigned branch office. (Bullock Depo. 133:11-15). They are responsible for managing the branch office staff, managing the branch field employees, managing the branch sales team employees, hiring and firing office, field, and sales team employees, ensuring branch employees are paid pursuant to Cleary's policies, and holding daily morning crew meetings according to Cleary's policies. (Dkt. 33, Declaration of Michael Brah, Former Cleary Slinger Branch Manager, at ¶4 (Brah Dec.); Dkt. 35, Declaration of Mike Irvin, Former Cleary Cokato Branch Manager, at ¶4 (Irvin Dec.); Bullock Depo. at 134:9-13). Cleary requires each branch manager to go through an in-house training program called Master of Branch Administration (MBA) to learn the various aspects of the branch manager job. (Bullock Depo. at 39:17-25 – 40:1-3).

As a company in the competitive construction industry, Cleary has an

interest in keeping costs down, including labor costs. (Bullock Depo. at 151:23-25-152:1-3). Branch managers are responsible for keeping labor hours on target for each job to ensure the financial performance of the branch and are tasked with keeping branch budgets on target. (Bullock Depo. 217:10-25). Cleary utilizes computer software that dictates the number of hours to be spent by field crew on each job and branch managers and foreman work together to keep projects on task and within those allotted hours. (Bullock Depo. 215:1-9; 219:10-11). Work performed by crew members at a jobsite is assigned the pay code "Field Labor Allocated (FLA)." (Bullock Depo. Ex. 19). The time spent driving by the Cleary designated driver to and from a jobsite is assigned the pay code "Drive Time Allocated (DTA)." (Bullock Depo. Ex. 19). Even though field crew employees perform other types of work (Branch Office Management – BOM, Field Labor Indirect – FLI, Drive Time Indirect – DTI), only field labor costs and drive time costs for the driver are hours that are charged or "costed" to the customer. (Bullock Depo. 213:10-25-214:1-12). Budgets for these non-customer hours may be zero. (Bullock Depo. 214:13-18).

## II.   CLEARY FOREMEN AND FIELD CREW MEMBERS

There are several types of employees that make up a field crew. (Bullock Depo. at 69:15-18). Cleary employs both foremen and non-foremen field crew members on each project. (Bullock Depo. at 69:15-25). In other words, foremen are members of a field crew, but do not comprise the entire field crew. (Bullock Depo. at 68:21-22).

By this motion, the Plaintiff, who has worked both as a non-foreman crew member and as a foreman, seeks to conditionally certify two classes. Those classes are defined as:

> All persons who have been or are employed by Cleary Building Corp. as field crew employees, and who were not compensated for time spent working before arriving at the worksite and for time spent working after leaving the worksite during the period from three years prior to the filing of this complaint to the present.

And as:

> All persons who have been or are employed by Cleary Building Corp. as foremen, and who were not compensated for time spent working before arriving at the worksite and for time spent working after leaving the worksite during the period from three years prior to the filing of this complaint to the present.

(See Dkt. 31 at ¶¶8-9).

The members of each of these classes are similarly situated as they were subject to Cleary's common pay practice of failing to provide compensation for work performed before and after arriving at the jobsite.

## A. Field Crew Employees Are Paid Only for Time Recorded, by the Foreman, Spent on the Jobsite, With Few Exceptions

Cleary currently employs approximately 380 foremen and field crew members, who are employed at its various branch offices. (Bullock Depo. at 127:20-25-128:1). Field crews are comprised of foreman, lead-man, drivers, and crew employees. (Bullock Depo. at 68:21-22; 69:1-10; 132:17-20). Each branch office has 1-2 field crews per office and a crew is usually made up of 2-4 employees, including a foreman. (Bullock Depo. at 128:10-25; 129:1-2).

All Cleary field crew employees, whether foreman, lead-man, or crew members, are classified as FLSA non-exempt employees and are paid on an hourly basis. (Bullock Depo. at 33; 20-22; 205: 1-19). Crew members and foremen are paid weekly based on the Daily Labor Reports submitted by foremen. (Bullock Depo. 35: 8-19). Field crew employees are paid overtime wages if they work more than forty (40) hours per week, but only if those hours are recorded on the Daily Labor Report. (Bullock Depo. at 205:18-20).

Foremen, as part of their additional job duties, complete Daily Labor Reports to record their own hours worked as well as other field crew hours worked. (Steele Dec. at ¶10; Irvin Dec. at ¶8; Brah Dec. at ¶8; Dkt. 41, Declaration of Steven Berndt at ¶11 (Berndt Dec.); Dkt. 34, Declaration of Nickolas Ashman at ¶11 (Ashman Dec); (Dkt. 36, Declaration of Nick Wojtanek at ¶11 (Wojtanke Dec.); Dkt. 38, Declaration of Mitch Schultze at ¶11 (Schultze Dec.); Dkt. 37, Declaration of Ryan Dziedzic at ¶11 (Dziedzic Dec.); Dkt. 39, Declaration of Eric Holevatz at ¶11 (Holevatz Dec.); Dkt. 43, Declaration of Curtis Sitzmann at ¶11(Sitzmann Dec.); Dkt. 40, Declaration of Ryan Smith at ¶11 (Smith Dec.); Dkt. 45, Declaration of Daniel Giacalone at ¶11 (Giacalone Dec.); Dkt. 44, Declaration of Daniel Lamke (Lamke Dec. at ¶11; Bullock Depo. at 34:5-6; 38: 7-16; 137:7-10; Depo. Ex. 12 at 000279; 000309). Foremen submit the Daily Labor Report to the branch secretary who inputs the data into Cleary's payroll system. (Bullock Depo. at 34: 5-9; 37:17-21). As previously discussed, hours costed to a specific job are coded as FLA and DTA and are billed directly to a customer as "Labor Hours." (Bullock Depo. 213:-22).

Other hours worked by field crew employees, which are not DTA and FLA, are classified as "Non-Labor Hours" which are "hours that are not related to a specific job." (Bullock Depo. 141:11-14). These non-labor hours are for projects that do not have a paying customer and are instead "general tasks." (Bullock Depo. 141:15-22). On rare occasions, non-labor hours are recorded and used to pay field crew employees for performance of general tasks such as cleaning a branch office. (Bullock Depo. 223:1-13). However, foremen are instructed not to and do not record time spent by field crew employees attending morning meetings or traveling to jobsites after those meetings on the Daily Labor Report. (Steele Dec. at ¶¶12-14, 17; Irvin Dec. at ¶¶6, 8-11; Brah Dec. at ¶¶7-8, 8[3], 9-11). Instead, foremen record the start of every crew members' work day, including their own, as the time the field crew arrives at the jobsite. (Steele Dec. at ¶10; Irvin Dec. at ¶8; Brah Dec. at ¶8; Irvin Dec. at ¶11; Berndt Dec. at ¶11; Ashman Dec. at ¶11; Wojtanek Dec. at ¶11; Schultze Dec. at ¶11; Dziedzic at ¶11; Holevatz Dec. at ¶11; Smith Dec. at ¶11; Sitzmann Dec. at ¶11; Giacalone Dec. at ¶11; Lamke Dec. at ¶11). As a result, even though non-labor pay codes exist, Cleary's policy of instructing foremen not to record morning meetings or travel time on the Daily Labor Report results in all field crew, foremen and crew members alike, working uncompensated time.

### B. Cleary's Field Crew Employees Share Similar Job Duties and Responsibilities

Field crew are primarily responsible for "building buildings." (Berndt Dec. at ¶3; Wojtanek Dec. at ¶3; Schultze Dec. at ¶3; Holevatz Dec. at ¶3; Dziedzic at Dec. ¶3;

---

[3] Both Mr. Irvin and Mr. Brah's declarations inadvertently contain two paragraphs 8.

Ashman Dec. at ¶3 ; Schultze Dec. at ¶3; Smith Dec. at ¶3; Sitzmann Dec. at ¶3;
Giacalone Dec. at ¶3; Lamke Dec. at ¶3; Steele Dec. at ¶8, Irvin Dec. at ¶8; Brah
Dec. at ¶8). To that end, crew job duties include attending daily meetings to discuss
job status or safety, loading and hitching Cleary trailers, loading Cleary crew
trucks, re-stocking Cleary crew trucks with supplies, updating reports, performing
equipment safety checks, laying foundation for the building, putting walls on the
building and roofing. (Berndt Dec. at ¶3; Wojtanek Dec.at ¶3; Schultze Dec.at ¶3;
Holevatz Dec.at ¶3; Dziedzic at Dec. ¶3; Ashman Dec. at ¶3 ; Schultze Dec. at ¶3;
Smith Dec. at ¶3; Sitzmann Dec. at ¶3; Giacalone Dec. at ¶3; Lamke at ¶3; Steele
Dec. at ¶8, Irvin Dec. at ¶8; Brah Dec. at ¶8).

In addition to the above mentioned duties, foremen are also responsible for
"manag[ing] the crews and construct[ing] the buildings to [Cleary] standards as
efficiently and safely as possible." (Bullock Depo. at 143:20-22). As part of managing
the crew, foremen record crew hours worked, set expectations for the crew,
communicate policies to crew members, ensure crew members are fully trained,
communicate safety, attitude and behavior expectations to crew members and
ensure the buildings are completed as quality jobs. (Bullock Depo. at 144:1-21).
Foremen also help branch managers manage the cost of projects. (Bullock Depo. at
149: 18-23). Crew members report to foremen and foremen report to branch
managers. (Bullock Depo. at 68:11-12).[4]

---

[4] A lead-man is a field crew employee who has demonstrated a certain skill level to achieve
"lead man status" and is considered the "right hand" of the foreman. (Bullock Depo. at 69:
3-10).

Drivers are field crew employees who are licensed, fed-med certified. (Bullock Depo at 185:2). Often, foremen are also the drivers on a crew, although other crew members may drive as long as they are licensed and certified. (Bullock Depo. at 132:19-23; 185: 2-25-186:1-4).

### C.   Cleary Field Crews, Including Foremen, Must Attend Daily Meetings Without Compensation

Cleary branch managers hold morning meetings on a daily basis. (Steele Dec. at ¶5; Irvin Dec. at ¶5; Brah Dec. at ¶5).  Both company policy and practice requires that all field crew employees, both foremen and crew members, attend these meetings on a daily basis. (Steele Dec. at ¶5; Irvin Dec. at ¶5; Brah Dec. at ¶5; Berndt Dec. at 5,8; Ashman Dec. at ¶5,8; Wojtanek Dec. at ¶5,8; Schultze Dec. at ¶5,8; Dziedzic at ¶5,8; Holevatz Dec. at ¶5,8; Smith Dec. at ¶5,8; Sitzmann Dec. at ¶5,8; Giacalone Dec. at ¶5,8; Lamke Dec. ¶5,8). Although foremen may have more information to provide to branch managers during these morning meetings as a function of their role as foremen, all crew members attend every meeting and are not compensated for this time.

### i.   Mandatory Morning Meetings

Cleary mandates that branch managers hold daily morning meetings at branch offices. (Steele Dec. at ¶5; Irvin Dec. at ¶5; Brah Dec. at ¶5). Attendance each morning is mandatory for all field crew employees, including foremen. (Steele Dec. at ¶5; Irvin Dec. at ¶5; Brah Dec. at ¶5; Berndt Dec. at 5,8; Ashman Dec. at ¶5,8; Wojtanek Dec. at ¶5,8; Schultze Dec. at ¶5,8; Dziedzic at ¶5,8; Holevatz Dec. at ¶5,8; Smith Dec. at ¶5,8; Sitzmann Dec. at ¶5,8; Giacalone Dec. at ¶5,8). In fact,

10

Cleary policy explicitly provides that foremen must meet with a branch manager every day. (Parsons' Declaration at Ex 1). The majority of the mandatory morning meetings are "production"[5] meetings wherein branch managers, foremen and crew discuss the status of ongoing projects. (Berndt Dec. at ¶6; Ashman Dec. at ¶6; Wojtanek Dec. at ¶6; Schultze Dec. at ¶6; Dziedzic at ¶6; Holevatz Dec. at ¶6; Smith Dec. at ¶6; Giacalone Dec. at ¶6). At these meetings, foremen report on the progress of a job, estimate the completion stage of a job and track labor. (Bullock Depo. at 152: 12-24; 237:18-22). Cleary provides an agenda for this daily meeting. (Bullock Depo. at 237: 18-22; 239:10-12, Depo. Ex. 23). According to Cleary policy, foremen are supposed to be paid up to 15 minutes per week, less than 3 minutes per day, for their attendance at morning meetings. (Parsons' Declaration, Ex. 2).   Despite this, Cleary commonly does not pay for this time. Further, the 3 minutes per day does not compensate for the actual meeting time, which usually lasts 30 minutes per day. (Berndt Dec. at ¶8; Ashman Dec. at ¶8; Wojtanek Dec. at ¶8; Schultze Dec. at ¶8; Dziedzic at ¶8; Holevatz Dec. at ¶8; Smith Dec. at ¶8).

Cleary's branch manager manual describes what branch managers should discuss at daily production meetings on a document entitled Topic List For New Branch Manager Initial Training:

---

[5] These daily meetings were previously called "production meetings." After the filing of this lawsuit, Cleary changed the name of the meetings to "daily foreman meetings."(Bullock Depo. at 220:10-13) Similarly, the agendas associated with these meetings are now referred to as "Daily Foreman Meeting Agendas," as opposed to "Daily Production Meeting Agendas." The "Daily Production Meeting Agenda" still is referenced throughout the Cleary Branch Manager Operations Manual.

<u>Production</u>

1.    Daily meeting with crews/Daily Production Meeting Agenda
- Pre-task plans, DVIR's
- Hours on building in progress
- Completion dates & status
- Inspection of crew vehicles, tools and maintenance planning

(Parsons' Declaration, Ex. 3).

Cleary policy references these daily production meetings in several other documents contained in Cleary's policy manuals. For instance, branch secretaries are instructed to print copies of fuel cost information sheets "for the crews to review in their morning meetings." (Bullock Depo. Ex. 13, Branch Operations Manual, 000576). Branch managers are instructed to review the "area fuel cost with the crews every morning to determine where to purchase fuel." (Bullock Depo. Ex. 13, Branch Operations Manual, 000576). Branch secretaries are also instructed to research and print out copies of weather forecasts for the branch manager to review "prior to the crew meeting each morning." (Bullock Depo. Ex. 13, Branch Operations Manual, 000602). Finally, the branch manager policy manual explicitly reminds branch managers that:

> The most successful managers meet with the crews at least 5 times per week. As the Branch Manager, you may elect to start your crew meetings earlier than 6:30 am, we encourage you to do so if it makes sense.

(Bullock Depo. Ex. 13, Branch Operations Manual, 000706).

These mandatory meetings typically begin at approximately 5:30 a.m. during the spring and summer and at approximately 6:00 a.m. during the fall and winter. (Berndt Dec. at ¶18; Ashman Dec. at ¶8; Wojtanek Dec. at ¶8; Schultze Dec. at ¶8;

12

Dziedzic at ¶8; Holevatz Dec. at ¶8; Smith Dec. at ¶8; ). The duration of these meetings depends on the number of ongoing projects but on average, they last approximately thirty (30) minutes. (Ashman Dec. at ¶8; Wojtanek Dec. at ¶8; Schultze Dec. at ¶8; Dziedzic at ¶8; Holevatz Dec. at ¶8; Lamke Dec. at ¶8).

Cleary Vice President, Todd Montgomery, explicitly directs both regional and branch managers to advise field crew employees regarding Cleary's mandatory attendance policy at these meetings. (Steele Dec. at ¶5; Irvin Dec. at ¶6; Brah Dec. at ¶6). Field crew employees are subject to discipline, up to and including termination, for failing to attend these meetings. (Steele Dec. ¶6). Despite the mandatory nature of these daily meetings, Cleary does not compensate field crew employees for time spent at these branch office meetings in the morning. (Steele Dec. at ¶ 6; Irvin Dec. at 8; Brah Dec. at ¶8; Berndt Dec. at ¶11; Ashman Dec. at ¶11; Wojtanek Dec. at ¶11; Schultze Dec. at ¶11; Dziedzic at ¶11; Holevatz Dec. at ¶11; Smith Dec. at ¶11; Sitzmann Dec. at ¶11; Giacalone Dec. at ¶11; Lamke Dec. at ¶11). By directing foremen to record hours only from the time the crew arrives at the jobsite, Cleary fails to compensate field crew employees for time spent each morning at mandatory meetings prior to arriving at the jobsite because the time is not recorded as time worked on employee timesheets. (Steele Dec. at ¶ 10; Irvin Dec. at 8; Brah Dec. at ¶8; Berndt Dec. at ¶11; Ashman Dec. at ¶11; Wojtanek Dec. at ¶11; Schultze Dec. at ¶11; Dziedzic at ¶11; Holevatz Dec. at ¶11; Smith Dec. at ¶11; Sitzmann Dec. at ¶11; Giacalone Dec. at ¶11; Lamke Dec. at ¶11).

###### ii.     Field Crews Perform Work After the Morning Meeting but Before Reporting to the Jobsite and After Leaving the Job Site Which is Not Compensated

In addition to attending daily mandatory meetings, Cleary also requires field crew employees, both foremen and crew members, to perform other uncompensated tasks each morning at the branch offices. (Steele Dec. at ¶ 10; Irvin Dec. at 8; Brah Dec. at ¶8; Berndt Dec. at ¶9; Ashman Dec. at ¶9; Wojtanek Dec. at ¶9; Schultze Dec. at ¶9-10; Dziedzic at ¶9; Holevatz Dec. at ¶9; Smith Dec. at ¶9; Sitzmann Dec. at ¶9; Giacalone Dec. at ¶9; Lamke Dec. at  ¶9). After morning meetings, Cleary employees perform various tasks, including but not limited to:

- Loading and unloading Cleary crew trucks;
- Hitching and unhitching trailers from Cleary crew trucks;
- Stocking Cleary crew trucks with various supplies such as nails and tools;
- Refueling Cleary crew trucks;
- Cleaning Cleary crew trucks;
- Performing equipment safety checks;
- Updating reports and completing paperwork such as payroll or logbooks; and
- Traveling to the lumberyard and purchasing lumber for the building.

(Steele Dec. at ¶ 8; Irvin Dec. at 8; Brah Dec. at ¶8; Berndt Dec. at ¶9; Ashman Dec. at ¶9; Wojtanek Dec. at ¶9; Schultze Dec. at ¶9-10; Dziedzic at ¶9; Holevatz Dec. at ¶9; Smith Dec. at ¶9; Sitzmann Dec. at ¶9; Giacalone Dec. at ¶9; Lamke Dec. at ¶9). Field crew employees are not compensated for time spent performing these tasks after morning meetings because, pursuant to Cleary policy, foremen are instructed not to record field crew employee hours until the crew arrives at the jobsite. (Steele Dec. at ¶ 10, 13; Irvin Dec. at 8; Brah Dec. at ¶8; Berndt Dec. at ¶11; Ashman Dec. at ¶11; Wojtanek Dec. at ¶11; Schultze Dec. at ¶11; Dziedzic at ¶11;

Holevatz Dec. at ¶11; Smith Dec. at ¶11; Sitzmann Dec. at ¶11; Giacalone Dec. at ¶11; Lamke Dec. at  ¶11).

In addition to performing tasks after the morning meeting, prior to leaving for the job site, Cleary also requires field crew employees to perform work when they return to the branch office from the jobsite at the end of the day. These tasks generally include unloading crew trucks and unhitching trailers. (Steele Dec. at ¶ 10; Irvin Dec. at 8; Brah Dec. at ¶8; Berndt Dec. at ¶11; Ashman Dec. at ¶11; Wojtanek Dec. at ¶11; Dziedzic at ¶11; Holevatz Dec. at ¶11; Smith Dec. at ¶11; Sitzmann Dec. at ¶11; Giacalone Dec. at ¶11; Lamke Dec. at  ¶11). Because Cleary's policy requires foremen to stop recording employee time when they leave the jobsite, field crew employees are not compensated for time spent unloading crew trucks or unhitching trailers upon return to the branch office. (Steele Dec. at ¶ 10, 17; Irvin Dec. at 8, 11; Brah Dec. at ¶8, 11; Berndt Dec. at ¶11; Ashman Dec. at ¶11; Wojtanek Dec. at ¶11; Dziedzic at ¶11; Holevatz Dec. at ¶11; Smith Dec. at ¶11; Sitzmann Dec. at ¶11; Giacalone Dec. at ¶11; Lamke Dec. at  ¶11).

### iii.   Field Crew Employees Are Not Paid for Compensable Travel Time Between the Jobsite and the Branch Office

In addition to attending meetings and performing tasks at the branch office at the beginning and end of the shift, field employees are not compensated for their travel time to and from the branch office.

After attending the daily mandatory meetings and performing various tasks at branch offices, Cleary field crew employees travel together in Cleary vehicles to and from jobsites. (Berndt Dec. at¶10; Ashman Dec. at ¶10; Wojtanek Dec. at ¶10;

Schultze Dec. at ¶10; Dziedzic at ¶10; Holevatz Dec. at ¶10; Smith Dec. at ¶10; Sitzmann Dec. at ¶10; Giacalone Dec. at ¶10; Lamke Dec. at  ¶10). On rare occasions, a field crew employee will seek permission to drive his personal vehicle. (Ashman Dec. at ¶10; Wojtanek Dec. at ¶10; Schultze Dec. at ¶10; Dziedzic at ¶10; Holevatz Dec. at ¶10).

For projects that do not require an overnight stay by the crew members, only the Cleary vehicle driver is compensated for travel time between the branch office and the jobsite. (Steele Dec. at ¶ 14; Irvin Dec. at 10; Brah Dec. at ¶10; Berndt Dec. at ¶12; Ashman Dec. at ¶12; Wojtanek Dec. at ¶12; Schultze Dec. at ¶12; Dziedzic at ¶12; Holevatz Dec. at ¶12; Smith Dec. at ¶12; Sitzmann Dec. at ¶12; Giacalone Dec. at ¶12; Lamke Dec. at ¶12).[6] As a result, field crew employees who are not driving are not compensated for time spent traveling to the job site, despite the fact that they have already begun their work day by attending branch meetings and performing work at the branch office.

Even on a rare occasion where a meeting is not held, employees still are required to report to the branch office, ensure the truck is stocked and travel together to the jobsite. (Berndt at ¶9; Ashman Dec. at ¶9; Wojtanek Dec. at ¶9; Schultze Dec. at ¶9; Dziedzic at ¶9; Holevatz Dec. at ¶9; Smith Dec. at ¶9; Giacalone Dec. at ¶9).

---

[6] If a field crew is required to travel out of town and stay overnight at a location, the entire field crew is paid for one round trip, for the travel time, regardless of how many trips are actually taken to the jobsite.  (Steele Dec. at ¶ 15; Irvin Dec. at 10; Brah Dec. at ¶10; Ashman Dec. at ¶12; Wojtanek Dec. at ¶12; Schultze Dec. at ¶12; Dziedzic at ¶12; Holevatz Dec. at ¶12).

## ARGUMENT

## I.     THE PURPOSE OF CONDITIONAL CLASS CERTIFICATION AND JUDICAL NOTICE.

The Plaintiff seeks to conditionally certify this action as a collective action for the purpose of discovery and also seeks Court-facilitated notice to all Cleary field crew employees pursuant to the FLSA, 29 U.S.C. §216(b).

The FLSA specifically contemplates plaintiffs pursuing their claims collectively, stating that "[a]n action … may be maintained against an employer … in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of themselves or other employees similarly situated." Id. In Hoffman-La Roche v. Sperling, 493 U.S. 165 (1989), the United States Supreme Court identified the main benefits of a collective action under the FLSA:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity.

Id. at 169-70.

Three important features define an FLSA collective action. First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the lawsuit and that consent must be filed with the court. Hoffman-La Roche, 493 U.S. at 168; Musch v. Domtar Industries, 252 F.R.D. 456, 458 (W.D. Wis. 2008, Shabaz, J.)

Second, the statute of limitations continues to run on each employee's claim until he files his individual opt-in form with the court. Kelly v. Bluegreen Corp., 256

F.R.D. 626, 629 (W.D. Wis. 2009, Crabb, J.); see also Houston v. URS Corp., 591 F.

Supp. 2d 827, 831 (E.D. Va. 2008)(Because the statute of limitations continues to

run on unnamed class members' claims until they opt into FLSA collective action,

objectives to be served through collective action justify conditional certification of a

class of putative plaintiffs early in the proceeding, typically before any significant

discovery, upon initial showing that members of the class are similarly situated.)

Judicial notice, at an early stage in the case, promotes the remedial purpose of

Section 216(b) by preventing the erosion of claims due to the FLSA's statute of

limitations.

　　Finally, to serve the "broad remedial purpose" of the FLSA, courts commonly

order notice to potentially similarly-situated employees, in order to inform them of

this opportunity to "opt into" the case. Hoffman-La Roche, 493 U.S. at 173. Because

of the "opt-in" requirement, "a representative plaintiff must be able to inform other

individuals who may have similar claims that they may join the suit." Austin v.

CUNA Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006, Crabb, J.)

Authorization of notice serves the broad, remedial purpose of the FLSA and

comports with the court's interest in managing the docket. Id., citing Hoffman-La

Roche, 493 U.S. at 172-4.

　　In light of these three important features, court-supervised notice is a

preferred method of managing the notification process for several reasons: it avoids

multiplicity of duplicative suits; it allows the court to set deadlines to advance the

dispositions of an action; and it protects plaintiffs' claims from expiring under the

statute of limitations. <u>Hoffman-La Roche</u>, 493 U.S. at 171-3.

## II.   THE STANDARD FOR CONDITIONAL CLASS CERTIFICATION.

The Western District of Wisconsin evaluates conditional certification under the FLSA as a two-step process. <u>Kelly</u>, 256 F.R.D. at 628-9. Under the first step, "[t]he requirements of conditional certification are lenient because approval simply allows plaintiffs to provide notice to other potential class members so that they may make an informed decision whether to join the case." <u>Witteman v. Wisconsin Bell, Inc.</u>, 2010 U.S. Dist. LEXIS 8845, *3 (Feb. 2, 2010, Crabb, J.)[7]. The standard for conditional certification has been described by this court as "a modest factual showing that she and potential class members were victims of a common policy or plan that violated the law." <u>Sharpe v. APAC Customer Service, Inc.</u>, 2010 U.S. Dist. LEXIS 1671, *12 (Jan. 11, 2010, Crabb, J.) At the close of discovery, defendant has the opportunity to move to decertify the class. <u>Id</u>.

The determination at this conditional certification stage does not involve adjudication of the merits of the claims. <u>Sjoblom v. Charter Communications, LLC</u>, 571 F.Supp.2d 961, 967 (W.D. Wis. 2008). The court relies on the complaint and any sworn statements submitted by the plaintiffs in determining whether the plaintiffs have met their burden. <u>Id</u>. (internal citations omitted). The plaintiff's burden is not heavy and may be met by a small number of sworn statements. <u>See</u> <u>Prentice v. Fund for Public Interest Research</u>, 2007 U.S. Dist. LEXIS 71122, *5 (N.D. Cal Sept. 18, 2007) (three declarations); <u>DeAsencio v. Tyson Foods, Inc.</u>, 130 F. Supp.2d 660, 663 (E.D. Pa. 2001) (four affidavits); <u>Camper v. Home Quality Mgmt., Inc.</u>, 200

---

[7] All unpublished decisions are attached as Exhibit 6 to Parsons' Dec.

F.R.D. 516, 529 (D. Md. 2000) (four declarations); Kelly, 256 F.R.D. 626, 631 (five declarations).

The Named Plaintiff "must demonstrate only that there is some factual nexus that connects [him] to other potential plaintiffs as victims of an unlawful practice." Sjoblom, 571 F. Supp. 2d at 967. Significantly, the focus of this inquiry is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." Brabazon v. Aurora Health Care, Inc., 2011 U.S. Dist. LEXIS 37057 at *8 (E.D. Wis. March 28, 2011)(quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). Conditional certification is warranted in this case because the evidence proffered by the Plaintiff exceeds what is required under the first-stage analysis and because court-supervised notice will serve the remedial purpose of the FLSA.

## III. THE NAMED PLAINTIFF AND THE PUTATIVE CLASS MEMBERS WERE VICTIMS OF A COMMON AND UNIFORM UNLAWFUL POLICIES AND PRACTICES.

At the first stage of the § 216(b) certification analysis, the plaintiff must only demonstrate that there is some factual nexus that connects him to other potential plaintiffs as victims of an unlawful practice. Sharpe, 2010 U.S. Dist. LEXIS 1671, *12 (Jan. 11, 2010, Crabb, J.) Because the Named Plaintiff is able to make this modest factual showing, he requests that conditional certification be granted and that notice be sent to the putative class members.

### A. Plaintiff and the Putative Class Similarly Allege that Cleary's Common Practices of Failing to Pay for Integral and Indispensable Activities Violate the Fair Labor Standards Act.

Cleary's policy of failing to compensate employees for morning meetings, travel time, and work performed at the branch office, violates the FLSA because it causes employees to work overtime hours without compensation. The FLSA requires all covered employers to pay employees at least federal minimum wages for all hours worked. 29 U.S.C. § 206. If a non-exempt employee works overtime hours, the employer must pay the employee at a rate of 1.5 times the employee's regular hourly rate. 29 U.S.C. § 207.

### i. Work Performed Prior to Arriving at the Jobsite, Including Attendance At Meetings, Is Integral and Indispensable to Crew Members' Primary Duties and is Therefore Compensable Work Time

Under the FLSA, all hours worked must be compensated. 29 U.S.C. §§ 206, 207. "Work" is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Tennessee Coal Co. v. Muscoda, 321 U.S. 590, 598, 88 L. Ed. 949, 64 S. Ct. 698 (1944). Under the FLSA, an activity is compensable when it is an integral and indispensable part of the principal activities." Steiner v. Mitchell, 350 U.S. 247, 256, 100 L. Ed. 267, 76 S. Ct. 330 (1956); See also Mitchell v. King Packing Co., 350 U.S. 260, 261-63, 100 L. Ed. 282, 76 S. Ct. 337 (1956); Brock v. City of Cincinnati, 236 F.3d 793, 803 (6th Cir. 2001); see also 29 C.F.R. § 790.8 (c) ("Among the activities included as an integral part of a principal activity are those clearly related activities which are indispensable to its

21

performance."). Employees may have more than one principal activity, and such activities are not limited to the predominant activity. See 29 C.F.R. § 790.8 (a). The Portal to Portal Act amends the FLSA, excluding activities that are "preliminary to or postliminary to said principal activity or activities" from compensation. 29 U.S.C. § 254 (a)(2); See also IBP, Inc. v. Alvarez, 546 U.S. 21, 28 (U.S. 2005); Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860, 863 (W.D. Wis. 2007); Kellar v. Summit Seating Inc., 664 F.3d 169, 173-174 (7th Cir. Ind. 2011). Plaintiffs allege that morning meetings, work at the branch office and travel time are not excluded as preliminary or postliminary activities. Instead, those activities are integral and indispensable aspects of the work they perform for Defendant and must be compensated.

The Sixth Circuit, in a recent and virtually identical case, held that time spent by employees at the Defendant's shop in the morning was compensable. Chao v. Akron Insulation & Supply Inc., 2005 U.S. Dist. LEXIS 9331 (N.D. Ohio May 5, 2005). In Chao, Defendant operated an installation company and employees were required to arrive at a scheduled time each morning, assemble work crews, receive assignments and load trucks with materials and equipment. Id. at 24. Employees were also required to return the equipment and the trucks to the shop after the workday and report to crew leaders about the day's work. Id. Defendant did not compensate employees for these activities performed before the employee's official start time. Id. The Court concluded that these shop activities were an indispensable part of the employees' principal activities explaining "because these activities are

integral to the employees' predominant activities associated with installing insulation, they [we]re not excluded as preliminary or postliminary activities under the Portal-to-Portal Act. See Herman v. Rich Kramer Constr., Inc., 1998 U.S. App. LEXIS 23329, (8th Cir. Mo. 1998). 29 C.F.R. § 790.7(c).

### ii.   Travel Time to and from the Jobsite is Compensable Under the Continuous Workday Rule

Travel from a central location to an outlying work site is also compensable, being "all in a day's work" if duties are performed at the central location before the travel. 29 C.F.R. § 785.38, 785.41.

> Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. 29 C.F.R. § 785.38

Furthermore, the performance of other work at a designated meeting place, even if merely picking up needed tools or materials, triggers at the designated meeting place the start of the employee's workday, with the same effect on subsequent travel. Chao, 2005 U.S. Dist. LEXIS 9331 at 27-28; See also Dole v. Enduro Plumbing, Inc., 1990 U.S. Dist. LEXIS 20135 (C.D. Cal. Oct. 16, 1990).

In Dole, the employer paid construction workers for their time beginning upon arrival at the initial jobsite and ceased payment when they left the jobsite for the day. However, the employer required its construction workers to report to its shop before going to any jobsite for that workday, in order to check in, meet fellow crew members, pick up a company truck, and collect required tools and materials.

23

Id. at *4. Furthermore, at the end of each day, the workers had to take the trucks back to the shop, where they filled out timecards and occasionally unloaded, refueled, and washed the trucks. Id. In an action alleging violations of the FLSA, the court granted partial summary judgment for the Plaintiff concluding that the workers' time spent in the shop, as well as the travel time to and from the jobsites was compensable time under FLSA. Id. at 19.

The facts of this case mirror those in Chao and Dole. Cleary requires field crew employees to arrive at the branch offices, attend mandatory meetings, perform various job duties and pick up the Cleary vehicle. The crew then travels together in the Cleary vehicle to the jobsite. It is only upon the arrival to the jobsite that field crew employees begin getting paid and just as it was in a violation of the FLSA in both Chao and Dole, the FLSA similarly prohibits Cleary's policies as well.

### B.   Courts Throughout the Country Have Conditionally Certified Classes Under Similar Unlawful Policies.

Courts in other jurisdictions regularly have conditionally certified cases involving similar unlawful policies that fail to compensate employees for performance of integral and indispensable activities. Adams v. Inter-Con Sec. Systems, Inc., 242 F.R.D. 530, 537 (N.D.Cal. 2007)(holding that  conditional certification of the collective action of security officers and supervisors was warranted because the employees had sufficiently demonstrated the existence of similarly situated persons subject to a common policy of requiring officers to attend pre-shift briefings without being compensated); Gallagher v. Lackawanna County, 2008 U.S. Dist. LEXIS 43722 (M.D. Pa. May 30, 2008)(granting conditional

certification of the class where the defendant required prison corrections officers and sergeants, prior to the start of their scheduled shifts, to attend pre-shift meetings and pick up freshly-charged radio batteries without compensating them for this time); Mitchell v. Acosta Sales, LLC, 2011 U.S. Dist. LEXIS 152235, 6-7 (C.D. Cal. Dec. 16, 2011)(granting conditional certification for merchandisers required to perform certain tasks before performing work including checking email, voicemail and receiving information about work assignments for the day).

Similarly, in a recent case in the Eastern District of Virginia, the court considered Defendant's motion to decertify a portion of plaintiff's class. Epps v. Arise Scaffolding & Equip., Inc., No. 2:10 Civ. 189, 2011 U.S. Dist. LEXIS 44240 (E.D. Va. Feb. 17, 2011). Even under the more stringent standard of decertification, the court refused to decertify explaining that "individual issues of proof go to individual damages and not to a company's liability to employee's as a class […]" "where plaintiffs claim they are all subject to a single policy that required that they report early and engage in other activity directed by their employer for which they have not received compensation." Id. at *32. The Court held that "individualized issues of proof go to the damages due to an individual plaintiff and not to the company's liability to employees as a class." Id.

In this case, both foremen and crew members allege that Cleary does not pay employees for all hours worked.  The foremen class and the crew member class are distinct and require separation because Cleary acknowledges that foremen are required to report for daily meetings and even acknowledges that foremen should be

paid for at least a portion of these meetings, though not the entire time. Furthermore, because foremen are frequently the licensed drivers, foremen, unlike crew, are generally paid for drive time after morning meetings. In contrast, Cleary does not compensate any field crew members for attending mandatory morning meetings, performing work after those meetings or for traveling to and from jobsites. Any differences between these classes speak purely to individual damage issues because both classes are subject to the same policy which results in failure to compensate employees for all hours worked.

Morning meetings, performance of work and travel time are required for performance of the field crew's job duties. Cleary's policy of not recording these as hours worked and therefore not providing compensation violates the FLSA as it fails to compensate the putative class members for time spent performing tasks that are integral and indispensable to principal activities performed for the benefit of the employer. The Plaintiff and members of the putative classes are subject to the same company wide policies for reporting to work, recording time, and payment for work time. Because the Plaintiff has brought forth substantial evidence of this policy and practice, including the deposition testimony of a Cleary corporate representative, the declaration testimony of the class members, and the declaration testimony of former Cleary regional and branch managers, Plaintiff requests that the case be conditionally certified and that Court- approved notice be sent to the putative class members.

### C.   The Named Plaintiff and Putative Class Members Commonly Were Subject to Cleary's Unlawful Pay Policies.

Under Federal law, employees must be compensated for all hours worked, including those hours spent working on principal activities and activities that are "integral and indispensable" to those principal activities. Here, Plaintiff and putative class members similarly allege that Cleary's policies and practices mandate attendance at morning meetings and require performance of tasks before leaving and after returning to the branch office. According to Plaintiff's supporting declarations and the deposition testimony of Cleary's corporate representative, Cleary maintains and enforces a consistent policy across branches designed not to pay employees for all hours worked, specifically for time spent at morning meetings or performing other work regardless of the fact that those tasks are compensable.

The facts as alleged, clearly establish that the Named Plaintiff and the putative class members are victims of a common policy which denies them payment for the time spent working "off the clock" and for travel time that is "all in a day's work." The Named Plaintiff, as a foreman, and similar to members of the putative foremen class, was required to attend a daily morning meeting, consistent with company policy. Like other foremen, he was either not compensated for this time or at most, was compensated 3 minutes a day. Further, during the time he worked as a crew member, like other crew members, the Plaintiff was required to attend daily morning meetings and to perform work prior to arriving at the jobsite without compensation. Additionally, the Plaintiff, both as a foreman and as a crew member, and like other foremen and crew members, was not compensated for that travel

27

time between the branch office and in town job sites unless he was designated as the driver. As a result of these common pay practices, the Plaintiff along with the similarly situated foremen and crew members has not been paid for all hours worked.

Because the Plaintiff has made a modest factual showing that a nexus exists between himself and the putative class members and because they were uniformly victims of a pay practice that denied them pay for overtime wage pay for hours worked over forty (40), he respectfully requests that conditional certification be granted for the class of Cleary field crew employees.

## IV.   THIS CASE IS APPROPRIATE FOR JUDICIAL NOTICE.

In <u>Hoffman-La Roche</u>, 493 U.S. at 165, the United States Supreme Court established that judicial notice to a putative class in a FLSA collective action is proper in "appropriate cases[.]" The Supreme Court determined that district courts have discretion to begin their involvement early – at the point of the initial notice of the lawsuit – because court authorization of notice serves the legitimate goal of avoiding duplicative suits and setting cut-off dates to expedite disposition of the action. <u>Id.</u> at 169-72.

Plaintiff's Proposed Notice of Pendency of Lawsuit is timely, accurate, and informative. See, <u>Hoffman-La Roche</u>, 493 U.S. at 172 (Plaintiff's proposed Notice is attached as Ex.8  to Parsons' Dec.). It is carefully crafted to mirror notices other courts approved in similar FLSA cases. (See Parsons' Dec. at Ex. 7, conditional certification notice approved by Judge William M. Conley in <u>Sherburn v. Duluth</u>

Trading Co., LLC, Case No. 11-cv-428, W.D. Wis.) Further, notice to all Cleary field crew employees and foremen with claims within the 3-year statute of limitations is warranted in this case.

The FLSA allows plaintiffs to collect damages within a two-year statute of limitations, or, if they can show that defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute," – the FLSA allows plaintiffs to collect damages within the three-year statute of limitations. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). A properly plead allegation of a willful violation, upon making the similarly situated showing, entitles the Plaintiff to send notice to potentially similarly-situated employees within the three-year statute of limitations. See, e.g., Albanil v. Coast 2 Coast, 2008 U.S. Dist. LEXIS 93035 (S.D. Tex., Nov. 17, 2008); Ruggles v. WellPoint, Inc., 591 F.Supp.2d 150 (N.D.N.Y. 2008); Harrington v. Educ. Mgmt. Corp., 2002 U.S. Dist. LEXIS 10966, at *2 (S.D.N.Y. June 19, 2002); Jacobsen v. Stop & Shop Supermarket Co., 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 15, 2003). Plaintiff has alleged willful conduct by Defendant and will be seeking three years of damages. Therefore, notice to all the field crew employees who worked for Cleary within the past three years is appropriate and Plaintiff requests that notice be sent to these employees as well as posted in the workplace for the approved notice period.

29

**V.    PRODUCTION OF A LIST OF CLEARY FIELD EMPLOYEES FROM THE LAST THREE YEARS IS NECESSARY TO FACILITATE NOTICE.**

Conditional certification typically entitles Plaintiff to specific discovery regarding putative class members. <u>Kelly</u>, 256 F.R.D. at 633. As discussed above, other Cleary field crew members employed during the past three years are "similarly-situated" for the purposes of the FLSA. Thus, identification of all putative class members is necessary in order to provide them with adequate notice as contemplated by law. See <u>Hoffman-La Roche</u>, 493 U.S. at 170; <u>Patton v. Thomson Corp.</u>, 364 F. Supp 2d 263, 266 (E.D.N.Y. 2005). Accordingly, Plaintiff requests that, in addition to entering an order granting conditional certification and approving Plaintiff's notice, the Court order Defendant to produce to Plaintiff within ten (10) days of the Court's order:

> A list, in electronic importable format (i.e., Microsoft Excel (.xls)), of all persons employed as field crew employees for Cleary Building Corporation, at any time from three years prior to the Court's order to the present, including his or her name, most recent known address, telephone number, dates of employment as a nurse, and his or her employee number.

<u>CONCLUSION</u>

The Plaintiff and the opt-in plaintiffs were all employed by Defendant as field crew employees and foremen at Defendant's various branch offices. All opt-in field crew member plaintiffs performed similar job duties for Defendant. All opt-in foremen plaintiffs performed similar job duties for Defendant.

Defendant's field crew employees similarly were denied overtime wage payments for preliminary work and travel time as a result of Defendant's common

policy and practice of instructing foremen not to pay field crew employees until arrival at the jobsite. Similarly, Defendant's foremen commonly were denied overtime wages for preliminary work and certain travel time.

The Plaintiff and opt-in plaintiffs in the field crew employee class and foremen class clearly have established that they are similarly situated for the purpose of conditional certification and notice, and respectfully request that their motion be granted.

Dated: March 21, 2012.

HAWKS QUINDEL, S.C.

By: /s/William E. Parsons

William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
222 West Washington Avenue, Suite 450
P.O. Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

Summer H. Murshid, State Bar No. 10075404
Email: smurshid@hq-law.com
222 East Erie Street, Suite 210
P.O. Box 442
Milwaukee, WI 53201-0442
Telephone: 414/271-8650
Facsimile: 414/271-8442

Attorneys for the Plaintiff